May it please the Court, Anuprasad appearing for a vote for Mr. Phan's petitioner. At issue is whether the Board may declare entire classes of convictions to be categorically particularly serious crimes for purposes of withholding of removal. The statute provides that aggravated felony convictions with a sentence of five years' incarceration or more are per se particularly serious crimes. For all other convictions, an inquiry must be made into the facts behind the conviction, the sentence, and whether or not the individual poses a danger to society. Mr. Prasad, can I ask you a procedural question about this case? And I want to ask the attorney for the government the same question because it troubles me. This case was up here once before. Yes, Your Honor. And when it was here before, the panel remanded with the order that the BIA conduct a frontescue hearing, correct? Yes, Your Honor. Which would have involved inquiry into the facts and other relevant matters about this crime. The BIA did not do so, did it? No, Your Honor. Isn't this case disposed of by the doctrine of law of the case? Was the BIA free on remand to ignore the mandate of this Court from the first panel? I don't believe so, Your Honor. Why didn't you argue that? I believe what we argued is that the BIA had provided justification for why it was not following the order of the Court. Well, but that's my – here's my problem, and I guess it's an argument I would make if I were you, but I want to make sure I have the facts right. It may well be that the BIA is entitled to come to us and argue that it can prescribe certain crimes as serious simply by their elements. But in this case, this Court ordered them to hold a frontescue hearing. I don't know that they're free to, when it goes back to them, say, well, we think the Court was wrong. We think we really can do this elementally. Doesn't this case just get disposed of on that basis? We ordered them to hold a frontescue hearing. We ought to – if we have to tell them twice to do so, I guess we ought to. But in this – we don't have to get to the broader question in this case, do we? I don't think so, Your Honor. I think the Board's justification, which I don't agree with, was that this Court's decision in Anya Ortiz had come out after it had remanded the case, but before the Board had issued its decision. And the Board's reading of Anya Ortiz is that it had granted Chevron deference to the Board's decision in Anya, which also came before us. I understand that was the Board's reading. It may or may not have been right, but there was a mandate here. There was an order of this Court. I don't think the Board or any other Court can say, well, yeah, but I bet you they wouldn't issue that mandate today, given what I know that would have been a different mandate. Isn't that – for me, that seems the sufficient way to dispose of this case without reading the broader question you raised. But I raise it so the government can be prepared to respond to it. Go on with your argument. Well, can I just follow up with that? You know, I'm a district court judge, and I've got to say that when the circuit says to me, do something, I do it, right? And here, in the earlier decision from the Ninth Circuit, and I'm reading from this, we have held that the BIA commits error when it fails to engage in case-specific determination examining all the factors identified in Mae Frantesco. Isn't that what the BIA is supposed to do? I mean, isn't – weren't they ordered in this case to do that? And doesn't that resolve the dispute? I think it does resolve the dispute. I would like to address the Board's reading of Año-Ortiz. I suppose in the event that they'd issued a published decision here, we have a Brand X issue. This was an unpublished decision, and that issue isn't here. But even if the Board's reading of Año-Ortiz was correct, they still needed a remand for a Frantesco hearing. But what the Board read Año-Ortiz as saying is that it had granted Chevron deference to NAM, and it read it as granting Chevron deference to the entire decision, every word of it, not reasoning on a specific issue. And on – Was the elemental crimes portion of NAM dicta? It was dicta, because they did go ahead and do a Frantesco analysis. They made findings regarding the facts underlying the conviction. Can there be Chevron deference to dicta? There cannot be Chevron deference to dicta. It needs to be central holding. Also, Año-Ortiz was not addressing the issue of per se categories of particularly serious crimes. So that little – there's a sentence in NAM which suggests that in some very unique cases, because most of the language suggests that you should have a full hearing, but that in some unique cases it might be enough that the elements of the offense establish particularly serious offense. But what you're suggesting is that that is dicta, and as a result, you can't give Chevron deference to dicta. Is that my following, what you're saying there? Yes, Your Honor. I think there's several reasons why we can't give Chevron deference to that portion of NAM. One is that it's dicta. The second is that the reasoning wasn't very clear. In NAM, they simply just recited the elements of the offense and said by its nature it's particularly serious without providing the analysis that allowed them to take a language of a statute and determine it was particularly serious. The third issue is whether or not that portion of the statute is vague. In Delgado, the Court had reached the conclusion that the statute was vague as to whether a non-aggravated felony could be a particularly serious crime. But here's a separate issue of whether or not there can be categorical particularly serious crimes that are not aggravated felonies with five-year sentences. And I think why is the statute vague on this? Why isn't the statute at least fairly susceptible of a reading that we're saying, Mr. Attorney General, if the penalty is five years or more, you've got to classify it as a serious crime. If it's less than five years, we'll trust your discretion for classification. And if so, why isn't the crime that your client committed, which is, as I understand it, lewd touching of a minor, why isn't that a serious crime? It's not per se a particularly serious crime. Why? So the sentence was less than five years. Right. So we understand we're in the second category, but why? The second category says without consideration of the sentence, an alien comment without consideration of the sentence committed a particularly serious crime. Why isn't this a serious – it sounds serious to me. And I agree that most convictions under 288A are going to be particularly serious crimes. I think there are some small class of 288A convictions that are not going to be particularly serious. The facts here indicate that he received no jail time or prison time on his sentence. It was suspended entirely, which is unusual for a 288A conviction. The second issue is whether or not he poses a – I guess it's not entirely unusual since we've got a couple of them in front of us today. Okay. A couple of them. The second issue is whether or not he poses a danger to society. His conviction was in 1996. He has not been in custody since then, and he's had no further criminal history since then. There was also a psychological report submitted, which was done at the time of the conviction, which indicates that there was no indication he poses a threat to others. Or has any other mental health conditions that would cause him to pose a public safety threat. So are there any crimes that the Attorney General can categorically classify as serious under the statute? I think on one of the other circuits, I think, dealt with a case that was first-degree manslaughter. And the – Is that Hamama? Is that the – yeah. The defendant only got four years, and the Attorney General said, well, it's manslaughter. Can a crime like that be classified as – I don't think the Attorney General or the Board have the power to create classes outside of the ones that Congress has stated. But you read the second class as requiring a fact-by-fact inquiry. And one of the reasons I read the second class – Case-by-case. Case-by-case, or an individual-by-individual. And if you look at it, it discusses in the first part of it the conviction with a five-year sentence, and it's an aggravated felony under the modified categorical approach. The second part discusses – refers to the alien and an inquiry into the alien. So that implies an inquiry into the individual circumstances. Well, putting in context what Congress did here, they first decided – well, it's actually second, I guess. Decided that aggravated felonies can be considered to be – to meet the standards so that you can have this per se determination by BIA. Then they modify that six months later to say you have to have at least five years in prison. Is that – that's correct, right? That's correct. Now, by doing that, are they not making a statement that in this unique situation that you can make a per se waiver of your hearing rights and a determination that you are essentially gone? In that unique situation, you have to have five years. Isn't Congress, by changing the law from aggravated felonies to aggravated felonies with five years, saying that is essentially what they're doing? In those unique circumstances, then you don't have to have a hearing.   If you have a presumption, you're basically to be deported. Yes. That is what Congress did is they basically said what the category of per se figure of serious crimes is. The Board and the Attorney General are free to weigh the evidence as a discretionary matter. They're free to create presumptions as the Attorney General did in Matter, Y.L. for drug trafficking crimes. But there still needs to be some individualized inquiry into the facts behind the conviction. In the Miguel Miguel case, there's also the creation of presumptions. But that's different than actually resulting in a waiver of a full evidentiary hearing. Right. Our position is that the only per se particular serious crimes are aggravated felonies for five years. Aren't you advocating that we reach a decision of statutory interpretation contrary to the Sixth and Eleventh Circuit? I mean, we have certain rules in the Ninth Circuit which we attempt to not create circuit splits. How do we avoid creating a circuit split in this case? Well, I think the reading which I'm proposing is consistent with this Court's rulings on the issue, going back to Afridi and going back to its adoption of Frantescu over the last 30 years. I think what Judge Bay is asking you is, isn't your reading inconsistent with the reading of other circuits? It may well be consistent with our prior cases, but would it not be inconsistent with the ruling of other circuits with respect to interpretation of the statute? The Sixth and the Eleventh have held that the Board can determine particular convictions to be made. Have they held it or have they stated it in dicta? I would need to go back and read their decisions to determine whether or not it was dicta or court. And what is the timing in relationship to the change in the statute by Congress making that five-year period of imprisonment fundamental to a per se finding? In other words, was Hamama, it's Hamama, right? Is that before it? I mean, I don't know the answer to the question. I don't know the answer off the top of my head. I would say that I know the government and many of those decisions were citing a BIA decision, Garcia-Garacho, from 1986, which held that some crimes were particularly serious. To my knowledge, other than the brief mention of NAM, that's the only time the Board has ever said that a particular class conviction is particularly serious. It's important to note that that conviction was under a different version of the statute prior to the creation of per se bars by Congress. And so I don't believe that those cases which a lot of those decisions and which the government and the Board have relied on are relevant to the inquiry of the current scheme in which Congress has spoken on what is a per se particularly serious crime. And what was the date of the most recent amendment to the statute? 1996. And Elmama is a 1996 case, so it must have been dealing with the previous version. Do you wish to save some time for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honors. I'm Erica Miles for Attorney General Holder. The Court should deny the petition for review as to the legal issue we've been discussing about the Board's authority to declare that some crimes are on their face particularly serious, but it should dismiss this petition for review with respect to any other issue, because Mr. Phan was ordered removed as an aggravated felon. So the criminal bar under 1252a2c applies to preclude this Court's jurisdiction. He was ordered removed on that basis, and he was found ineligible for withholding a removal on that basis. And other than this distinct legal question about the Board's authority to do this, there's no other legal or constitutional issue before this Court. Well, can I ask you to address the issue that I posed to your opponent?  Am I reading the history of this case well? No, you're not. This Court did remand. Why wasn't the Board required and consistent with our remand to send it back to the IJ to conduct a Frantoski hearing? Well, the timing of the Board's first decision predated its precedential decision in matter of NAM. But our first decision in this case postdated NAM, did it not? Yes. It did postdate it. So if the Board thought that NAM made a difference, shouldn't it have told the first panel that we think we can do these things categorically and look at NAM? Well, in the first Board decision, matter of NAM didn't exist. So I understand. But between the first Board decision and our decision, NAM came down. Yes. Did the government argue to the first panel that NAM vindicated its position and that it could just do this as an elemental matter? I'm not certain. But the Board decision, the first Board decision didn't make a finding that it was on its face. It said it was on its face and also while recognizing the short sentence. So similar to what occurred in Afridi, the Board acted bringing in some factors. I understand. But for better or worse, the first panel may have been entirely crazy. I don't know who was on it. I suspect it wasn't. But it said, Board, we don't buy your position. Go back in this case. We affirm everything else. But go back in this case and go and do a frantescue analysis. We don't think what you've done was sufficient. Yes. At the time this Court made that decision, NAM had already come down. Yes. I don't know, because I can't find a briefing, whether the Board in that case said, we don't need to do a frantescue analysis because under NAM we have now decided that we can do these things elementally. No. Whether it did or didn't, for better or worse, this Court said, go back and do that analysis. And when it got back, as I read it, the Board said, we don't have to do what the Ninth Circuit told us to do. How can we let that happen? Well, Brand X does permit the Board to take in a new precedent decision to clarify its position of ambiguous terms. And in matter of NAM, it re-solidified after all of the amendments that we've been discussing to this statute. So after the final amendment in 1996, matter of NAM is the first precedent decision to come out that reaffirms that this ability to declare crimes as per se particularly serious on their face is in fact still within the Board's authority. So it's an announcement of its longstanding position, but that it is still alive. And under Brand X, this Court should defer. It was a change. It wasn't a change in the law, but it was a reaffirmation that that law is still good. What I'm having difficulty is because NAM came down while this was first pending here in the Court of Appeals, either you should have made that argument the first time through to the Court of Appeals, or maybe you did and lost it. I don't think you can, when it gets remanded, say, well, we lost in the Court of Appeals, but we think we'd win today if we went back up and re-argued it, so we're going to ignore what they said. I understand your position, Judge Hurwitz, but I'm not aware of what specifically was briefed the first time around. I couldn't find it either. Yeah. But that said, the Board didn't act in that way the first time, so generally our policy would be not to defend. That would sort of be a Chenery violation by supplying an analysis that the Board didn't rely on the first time around. The Board didn't make only an on-the-face of the crime or a per se finding in the first decision. So we wouldn't, while we might have, you know, submitted a 28-J letter of matter of NAM, we wouldn't have defended the Board's ability to make an on-the-face determination because it didn't happen. So on remand, the Board did that, and so here we are now defending the Board having done that. And the Board, as you read in its decision, did that in light of time passing and matter of NAM coming down and announcing for the first time in a precedent decision that its authority to do this still is good law. So the Board took its new and reaffirmation of its ability to do this and made a finding on remand. You were not relying, then, on Ninth Circuit precedent. I thought that you were suggesting that there was other Ninth Circuit precedent which applied a Chevron deference to various parts of the statute, not to the per se finding. That has never been addressed. Right. Except one could argue that this particular decision in the Fan case is a clear statement from the Ninth Circuit that in per se findings, that's established. You need to have a whole Francesco hearing. So what you're suggesting is, no, you're not relying upon anything from other cases in the Ninth Circuit in which Chevron deference is applied. You're just basically saying the Board made this determination of this is what we think we have the power to do, and therefore you're relying upon that. Is that correct? The only ñ what we're relying on in the Ninth Circuit decisions you're referring to that are ñ that accorded Chevron deference to aspects of matter of NAM, we're using that just, again, as a timeframe, and that this Court does need to accord Chevron deference to the Board's interpretation. So what I was discussing was the timeline of Judge Hurwitz's question about the Board on remand and why it acted in its way. But at least as to the main question here about this per se finding by the Board, you're not relying upon Ninth Circuit case law at all. You're basically suggesting that the BIA makes this decision, that they can in fact do this, and by doing this, prevent any kind of hearing, basically suggest that they can make a finding that because a person's convicted of this offense which they determine to be particularly serious, that person's gone without a hearing. Right. This issue ñ excuse me. That is directly inconsistent, is it not, with the decision in Fan, which says in these kinds of per se analyses, you have to have a full hearing, a case-specific determination. In Fan or in Afridi? Fan. Citing Afridi. In the earlier decision here. Yes. In this case. It may not have been a precedential decision, so you're certainly not ñ Right. ñ far from coming to us and saying it was wrong. But in this case, don't you have to follow it? No. The board ñ the reason that the board, as I explained, matter of NAM did come out and reaffirm that it has this ability, and this Court has no existing precedent examining the question of whether or not the board has this authority to do this. And we are here asking you to accord Chevron deference. Under our local rules, unpublished memorandum dispositions cannot be cited as precedent but can be persuasive. Yes. Except in the case itself, don't we follow memorandum dispositions as law of the case in the case itself? Yes. This Court does, typically. It balloons up. But Brand actually ñ It disposes this case. I mean, under our rules, what are we going to say? Do a Francesco hearing. Here's the ruling of the Court. But if you don't want to do it, that's all right. We're just, you know, we're just wasting our time in nice surroundings, right? Well, we believe that the board had set the foundation the first time around in its decision, and Brand X permits the Court. Just like if this ñ if it had been a precedent decision, matter of NAM is its own interpretation, and this aspect of matter of NAM has not been. And tell me what about Brand X allows the BIA to ignore the mandate of this Court to do a Francesco hearing? I'm all ears. Well, Brand X permits an agency, even though a court of appeals might have a precedent decision on an issue interpreting a term, if the agency has not interpreted it or, in this case, has not reaffirmed since statutory amendments, then the agency has the ability to override, so to speak, and speak in the first instance on that particular interpretation. And here ñ Is it the same case where they have a mandate to do something? I would say so. I think that that is a compelling enough reason. It is a ñ it is a reaffirmation of a longstanding precedent following statutory changes. And here, the board had a case ñ had the case in front of it. NAM wasn't on the books the first time around, and it was now. And Brand X permits that agency to say, hey, we have this precedent decision now that ñ that takes a different interpretation than what this Court had said. You agree with me that NAM, with respect to determining categorical or elemental per se cases, is dicta? I do not agree. Oh, you don't? No. Okay. I don't want to hear about that. If you look at the board's decision in NAM, the first finding on ñ with regard to NAM's crime being particularly serious is ñ and this is at page 342 ñ we find that the Respondent's offense is a particularly serious crime based solely on its elements, i.e., that the offense by its nature is a particularly serious one. That is the primary finding in NAM. It is not dicta. It is a holding. That ñ then, when we were talking about the facts and circumstances analysis, that part starts with a moreover. The evidence in the record relating supports our finding that the conviction is particularly serious. So first and foremost, on its elements, it is. And that is the holding. And then secondly, they say, also, if you engage in this ñ in this other analysis, that supports our finding. This is perhaps a simplified question, but is it the BIA's position that when a circuit court issues an opinion to do something, that the BIA has the power to then render another decision on its own which overrules or rejects what the circuit court said they should do? I can't speak to my knowledge of what the BIA's standard approach or policy would be. I think generally it does follow the law of the case doctrine. But in ñ but in a situation such as this, where we have an intervening precedent decision that takes a different ñ a different position than what the Ninth Circuit has said, but it's the agency's first announcement of its interpretation of a term, since there's been amendments to the statute, that under Brand X, the agency does have that authority. And that can override. And your answer to the question is yes. And when they're faced with a circuitÖ Sometimes. Sometimes. Or rarely. Or when the circuit court says you do X or you have to apply various standards and the BIA decides that they think that's really wrong and they don't agree with it, then they can rule on another case and then use the ruling on the other case to essentially disregard the decision that was made by the court of appeals. I would say that that is a fairly rare circumstance, given that there is not often this type of intervening precedent. And this Court remands all the time because of intervening precedent and wants the board to address it in light of that important decision that's come out where the board has spoken interpreting a term. And here, that did actually happen. This Court didn't recognize it because it wasn't an issue. There wasn't a per se finding in the case. But that case did come out in the meantime, and it does provide the board's legal authority. It established in Frantescu and reaffirmed it in NAM that you start with looking at the elements of the crime. It either is or is not particularly serious. Ms. Miles, let me ask you a question and see if I understand your position. Let's assume NAM hadn't intervened. Could the board in this case on remand have said, yeah, Ninth Circuit, you told us to have a Frantescu hearing, but we're going to issue a precedential decision saying we've changed our mind, we're just going to look at the elements? I'm not certain. I believe the board would have to address the court's order. But your position is that NAM excused it, if you will, from having to address the court's order. Well, it didn't excuse it. That seems to be your position. I just want to make sure I understand it. Here, yes, under Brand X, because it did have an intervening case interpreting this term since the statute was amended, and this Court doesn't have precedent on this particular topic. Well, can I just ask you the broader question? You have Congress that, first of all, says aggravated felonies can be particularly serious offenses, and then they limit that to 5 years. You have to get a sentence of 5 years. Yes. Isn't that a fairly clear statement that Congress has decided this is the kind of case that would not require a hearing, and it is per se a finding of a particularly serious offense? And by logical extension, what they're saying is Congress has the right to decide this, the BIA does not, and in all other cases of particularly serious offenses, there needs to be the same kind of approach that was in place prior to that determination. That's a full hearing in which you let somebody, you know, basically argue the nature of the offense, the nature of the person, et cetera. Well, as this Court's case law establishes, this statute establishes one class of per se by statute, as you recognize. Aggravated felon with an aggregate term of 5 years. But the statute also couches the Attorney General's authority with the word per se. So Congress has the right to decide. The Attorney General, as you mentioned, so Congress decided that this class is per se particularly serious, and then left the rest to the Attorney General to decide. And this Court recognizes in several of its decisions that that is a discretionary determination. Does that mean the Bureau can decide any particular crime is particularly serious, and as a result there would be no need for hearing? In other words, are you suggesting really that the BIA has the power to say any particular crime that they want? As soon as they do that, no hearing. And, in fact, in these particular cases, the ones we've got today, these decisions are not made by the BIA. They're made by the individual judge. When the judge says, okay, I think this is a particularly serious offense, as a result, no hearing, no rights, therefore, you are essentially to be deported, you think they have the power to do that? Well, yes. They're under longstanding precedent. Since 1982, the Board has announced that it has this authority, and it has time and again applied it in several decisions. It's been recognized and affirmed by the Second Circuit and the Sixth Circuit, and in – and it is not – it's not the case that somebody doesn't get a hearing. They get a hearing, and they can brief whether or not they believe that a crime is particularly serious or not on its face. And that means – But under your view, they can't bring in the facts of the case. Not if – and that's – and that's if you start at the beginning of the spectrum of how you analyze this, it – it says that some crimes on their face are particularly serious under Frentescue and under matter of NAM. And – and the Board and the immigration judges are required to, of course, offer their reasons. They can't just arbitrarily state – state that and provide no basis. And they do have to look to their other case law to determine – to compare what types it usually does find to be a danger to the community. But – but in this case, for example, Mr. Fond couldn't come in and say, it was one isolated incident in a wonderful life. I've been a pillar of the community. I'm not a danger. I've been president of the local charities. Whatever – Right. He couldn't do that because in your – in your instance, this is a particular serious crime that ends the investigation. Yes. The Board – the Board determined that this crime on its face is particularly serious, and it looked at the – the vulnerable age of the victim, the sexual nature of the offense, that it has the specific intent of creating a sexual arousal in either the victim or the perpetrator. And California law entirely supports that this is a vulnerable class, that this statute was enacted. California law supports that these offenders are viewed as danger – dangerous to the community. They require mandatory sex offender registration, whereas for other offenses under the statute, it's discretionary to the judge reviewing the crime in the sentencing case. You've exceeded your time. Yes. Thank you very much. Thank you. Let's give them two minutes because the other ones are over in. I just wanted to address a couple of issues. One, whether or not the Board's decision here was discretionary. The Board's decision here looked solely at the elements of the statute and made a legal determination that all individuals with a 2888 conviction have convictions for a particular serious crime. No part of the Board's decision was a matter of discretionary. There was no case-by-case analysis. There's no weighing of evidence. There's no looking at facts and reaching a discretionary decision. So to the extent that the government relies on the discretionary bar to jurisdiction, there isn't a discretionary decision here. If the Board had weighed evidence and reached a conclusion, then you could review it for abuse of discretion, and I would agree with that. But there was no weighing of evidence that took place here. The other issue I want to point out is that there is no precedent on this exact issue from the Ninth Circuit. But under the preceding version of the statute, which existed between 1990 and 1996 in which every aggravated felony was a particularly serious crime, the Board had tried a similar approach to create additional classes of per se particularly serious crimes. And the Ninth Circuit looked at that in Beltran-Zavala and said, look, Congress obviously knows how to create a per se category. If they wanted to create a per se category, they could, and they chose not to. Even though Beltran-Zavala doesn't apply here because there was an amendment and the statute's no longer the same, the two statutes are virtually identical with the exception of the five-year limit in the two of them. So by doing the five-year limit, Congress is making a statement that this is per se, and that by logical conclusion, the deduction suggests that anything else would require not a per se finding by the Board. That's the point that you're making? Right, Your Honor. And the example of a four-and-a-half-year manslaughter sentence, it's not per se. You have to go through the hearing. The Board can choose to weigh that conviction very heavily towards it being a particularly serious crime and a risky decision, but they need to have the hearing and do the evaluation. All right. Thank you very much. Thank you. The case of Phan v. Holder will be submitted. And the Court thanks both counsel for a very good argument.
judges: Sessions, Bea, Hurwitz